**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARIO B.,[1] <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAZAKI, Acting Commissioner of Social Security, <br><br> Defendant. | Case No. 2:23-cv-00935-MAA <br><br> **MEMORANDUM DECISION AND ORDER REVERSING DECISION OF THE COMMISSIONER AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS** |

**I.  INTRODUCTION**

On February 8, 2023, Plaintiff Mario B. ("Plaintiff") filed a Complaint seeking review of Defendant Commissioner of Social Security's ("Commissioner" or "Defendant") final decision denying his application for disability insurance benefits under Title II of the Social Security Act.  (ECF No. 1.)  Pursuant to 28 U.S.C. § 636(c), the parties consented to the jurisdiction of a United States Magistrate Judge.  (ECF Nos. 6, 10.)  On April 10, 2023, Defendant filed an

---

[1] Plaintiff's name is partially redacted in accordance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

Answer, which was limited to the filing and service of the Certified Administrative Record ("AR," ECF No. 9). On May 10, 2023, Plaintiff filed an Opening Brief. (ECF No. 12.) On July 10, 2023, Defendant filed a Brief. (ECF No. 15.) On July 24, 2023, Plaintiff filed a Reply Brief. (ECF No. 16.) This matter is fully briefed and ready for decision. The Court deems the matter appropriate for resolution without oral argument. *See* Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15. For the reasons discussed below, the Court reverses the decision of the Commissioner and remands the matter for further administrative proceedings.

## II.    SUMMARY OF ADMINISTRATIVE PROCEEDINGS

Plaintiff filed a Title II application for disability insurance benefits on April 26, 2021. (AR 170–71.) Plaintiff alleged disability beginning February 12, 2020. (AR 170.) The Commissioner denied the application on August 12, 2021 (AR 66), and again upon reconsideration on November 3, 2021 (AR 81). On December 7, 2021, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 100–02.) At a telephonic hearing on May 2, 2022, the ALJ heard testimony from Plaintiff—who was represented by counsel at the hearing—and a vocational expert. (AR 29–54.)

In a decision dated May 23, 2022, the ALJ denied Plaintiff's application after making the following findings under the Commissioner's five-step evaluation. (AR 12–28.) At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since February 12, 2020. (AR 17, ¶ 2.) At step two, the ALJ found that Plaintiff has the following severe impairments: "history of left elbow tendon rupture and lateral epicondylitis, status-post lateral epicondylectomy and obesity." (AR 18, ¶ 3.) At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the agency's listed impairments. (*Id.* ¶ 4.) Next, the ALJ found that Plaintiff "has the residual functional capacity to perform medium work as

defined in 20 CFR 404.1567(c) except the claimant can frequently push, pull and reach overhead with his left upper extremity." (AR 19, ¶ 5.) At step four, the ALJ found that Plaintiff is capable of performing past relevant work as a janitor. (AR 24, ¶ 6.) At step five, the ALJ compared Plaintiff's residual functional capacity with the physical and mental demands of a janitor, based on the testimony of the vocational expert, and found that Plaintiff is able to perform it as generally performed. (*Id.*) Accordingly, the ALJ concluded that Plaintiff was not disabled, as defined by the Social Security Act, from February 12, 2020. (*Id* ¶ 7.)

On December 9, 2022, the Appeals Council denied Plaintiff's request for review. (AR 1–6.) Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *See* 42 U.S.C. § 405(g).

### III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the Court reviews the Commissioner's final decision to determine whether the Commissioner's "decision to deny benefits . . . 'is not supported by substantial evidence or is based on legal error.'" *Treichler v. Comm'r of SSA*, 775 F.3d 1090, 1098 (9th Cir. 2014) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (quoting *Robbins v. SSA*, 466 F.3d 880, 882 (9th Cir. 2006)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Court "must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at 1035). "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." *Orn v. Astrue*, 495 F.3d 625,

630 (9th Cir. 2007) (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)). "If the evidence can support either affirming or reversing the ALJ's conclusion, [a court] may not substitute [its] judgment for that of the ALJ." *Robbins*, 466 F.3d at 882.

## IV. DISCUSSION

### A. Disputed Issues

The parties raise two disputed issues:

1. Whether the ALJ properly evaluated Plaintiff's subjective symptom testimony.
2. Whether the ALJ properly evaluated the medical opinions of Matthew Longacre, M.D.; Michael Green, D.O.; Michael Hadley, M.D.; and Gregory Ogata, M.D.

(ECF No. 12, at 2–3; ECF No. 15, at 2.)

For the reasons discussed below, the Court finds that reversal and remand for further administrative proceedings are warranted for Issue One, based on the ALJ's evaluation of Plaintiff's symptom testimony. Having found that remand is warranted, the Court declines to address Plaintiff's remaining argument. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); *see also Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand.").

### B. Applicable Law

When assessing a claimant's credibility regarding subjective pain or intensity of symptoms, the ALJ must engage in a two-step analysis. *Trevizo v. Berryhill*, 871

F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Garrison*, 759 F.3d at 1014 (quoting *Lingenfelter*, 504 F.3d at 1035–36). "In this analysis, the claimant is *not* required to show 'that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.'" *Id.* (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)). "Nor must a claimant produce 'objective medical evidence of the pain or fatigue itself, or the severity thereof.'" *Id.* (quoting *Smolen*, 80 F.3d at 1282).

If the claimant satisfies this first step, and there is no evidence of malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the claimant's testimony about the symptom severity. *Id.* at 1014–15; *see also Robbins*, 466 F.3d at 883 ("[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each."). "This is not an easy requirement to meet: 'The clear and convincing standard is the most demanding required in Social Security cases.'" *Garrison*, 759 F.3d at 1015 (quoting *Moore v. Comm'r of SSA*, 278 F.3d 920, 924 (9th Cir. 2002)). The ALJ must evaluate "the intensity and persistence of those symptoms to determine the extent to which the symptoms limit [the claimant's] ability to perform work-related activities for an adult . . . ." Social Security Ruling 16-3p, 2016 SSR LEXIS 4, at *4 (Mar. 16, 2016).

While the ALJ cannot "delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness," *Trevizo*, 871 F.3d at 678 n.5, the ALJ may consider "prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; . . . unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of

treatment; and . . . the claimant's daily activities," *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Smolen*, 80 F.3d at 1284). Inconsistencies between a claimant's testimony and conduct, or internal contradictions in the claimant's testimony, also may be relevant. *Burrell v. Colvin*, 775 F.3d 1133, 1137 (9th Cir. 2014). In addition, the ALJ may consider "the claimant's work record and observations of treating and examining physicians and other third parties regarding, among other matters, the nature, onset, duration, and frequency of the claimant's symptom; precipitating and aggravating factors; [and] functional restrictions caused by the symptoms . . . ." *Smolen*, 80 F.3d at 1284. However, it is improper for an ALJ to reject subjective testimony based "'solely on a lack of objective medical evidence to fully corroborate' the claimant's allegations." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1227 (9th Cir. 2009) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991)).

The ALJ must make "a credibility determination with findings that are sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002)); *see Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) ("A finding that a claimant's testimony is not credible 'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" (quoting *Bunnell*, 947 F.2d at 345–46)). Although an ALJ's interpretation of a claimant's testimony may not be the only reasonable one, if it is supported by substantial evidence, "it is not [the court's] role to second-guess it." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

///

///

///

### C.  Plaintiff's Statements

During the hearing before the ALJ, Plaintiff testified about his problems and limitations as follows:

Plaintiff last worked on February 12, 2020, as a senior custodian for Norwalk/LA Mirada Unified School District. (AR 33.) He stopped working after he ripped a tendon from the muscle on his left arm at the elbow. (AR 33, 36–37.) His employer could not accommodate his needs at work and let him go. (AR 33.) He has not applied for any other work since this time. (AR 34.) He tried going to a couple places, told the prospective employers about his surgery and condition, and was told that they could not accommodate him because a custodian requires both arms. (AR 48.) He has never thought about doing any job other than custodian, as he has been a custodian his entire life. (*Id.*)

If Plaintiff wanted to go back to his custodian job, he does not think his former employer would take him back. (AR 41.) In addition, if he were offered his custodian job now, he does not think he would be able to do it. (AR 36.) He had to use his left arm for everything, like picking up trash, dumping trash, mopping, sweeping, cleaning toilets, using the blower in the morning, and extra work that the teachers had him do, like moving desks and furniture. (*Id.*) The heaviest thing that Plaintiff had to lift was the trash cans, which were over eighty pounds and which he had to pick up every day at breakfast duty and lunch duty. (*Id.*)

Plaintiff had physical therapy, a plasma procedure, shots, and surgery. (AR 37.) He takes pain medication (Ibuprofen 800s). (*Id.*) He is not doing any treatment currently other than Ibuprofen. (*Id.*) All of this has not helped; his condition has gotten worse in the past two years. (AR 38.) He was given a sling after his surgery, but has not received an assistive device after that. (AR 40.) The doctor told him to stop using the sling after the surgery. (AR 47.) He does not use an over-the-counter brace for his elbow. (AR 46–47.)

///

In the past few years, Plaintiff has gone to see his doctor or gone to the emergency room several times for pain. (AR 43.) One time it was cloudy and he was getting "massive, massive, massive sharp pains" in his elbow and running to his neck. (*Id*.) He went to the emergency room and they gave him shots. (*Id*.) It helped him temporarily, but was not a long-term fix. (*Id*.) They did not keep him overnight, but he was there for six or seven hours. (*Id*.) The last time Plaintiff saw a doctor was the week before the hearing. (AR 47.) The doctor told him to keep taking Ibuprofen, instructed him to get an MRI on the left elbow to see if he needs more surgery, and ordered more physical therapy. (AR 40–41, 47–48.)

He has pain on his left arm where he had the surgery, and the pain travels to his neck and back down. (AR 38.) He gets a dull, sharp pain and then it travels back to his neck and to his arm. (*Id*.) He is in pain every day. (*Id*.) He rates his pain as "eight, seven to eight," where ten is so bad that he would have to go to the hospital for it. (AR 39.) The level of pain varies according to the weather; cold weather is worse for it. (AR 39–40.) His left elbow is swollen every day. (AR 41.)

He does not have full range of motion in his left elbow. (AR 40.) He cannot tie his shoes, put on socks, take a shower, or drive. (AR 38.) Putting on socks is hard due to the reaching and stretching. (AR 39.) He does not drive anymore because the pain is too high and his kids do not want him to drive at all. (AR 39, 46.) He cannot use his left arm over his head, for example, to change a light bulb on the ceiling. (AR 38.) He cannot even squeeze because it hurts. (*Id*.) He cannot do anything with his left hand, like open a door; he always uses his right hand. (AR 39.) He cannot button up a shirt or use his neck. (*Id*.) He cannot even pick up a beer or gallon of milk with his left hand. (AR 43.) When he is sitting, he cannot use his left arm to stand up so he has to ask one of his kids to help him up. (AR 44.) He needs both arms to stand up from his couch because it is very old and he sinks down deep into it. (AR 45–46.) He would not be able to have a desk job working on a computer because he would not be able to use his left hand to work on

the keyboard. (AR 44.) His left arm hurts him regardless of whether he is standing or sitting. (*Id.*) He never cooks for himself; his daughter cooks for him and his sons. (AR 49.) His kids do laundry and "everything." (*Id.*) The "bottom line" is that he is a "worthless man" and cannot do anything with the pain. (AR 38.)

Plaintiff is right-handed. (AR 41.) Sometimes he has pain in his right hand or arm, and other times he does not. (*Id.*) He uses his right arm to do things, and his kids will help him if he has difficulties. (AR 39.) There is no limit on how much he can lift with his right hand. (AR 44.)

He has to take two Ibuprofen to sleep at night. (AR 44.) The pain in his arm keeps him awake at night. (AR 44–45.) When he turns over at night, it hurts. (AR 45.) He does not sleep much because of the pain. (*Id.*) He mostly sleeps on his right side. (*Id.*) During the daytime, he has to lay down. (*Id.*) The most comfortable position laying down for him is when he is not on his left arm. (*Id.*) During the day, he takes thirty-minute naps. (*Id.*) He does not do much during the day except watch television and sit on the couch. (*Id.*)

Plaintiff filed a workers' compensation claim, which settled a long time ago for $65,000 (Plaintiff received $55,000 and his attorney received $10,000). (AR 33–34.) He currently receives MediCal and food stamps. (AR 34.) His plan is social security; without social security, he will not be able to live. (AR 42.)

### D. Analysis

At the first step of the two-step evaluation, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms[.]" (AR 19.) At the second step, however, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (AR 19–20.) Specifically, the ALJ took issue with the following aspect of Plaintiff's testimony:

"Regarding the claimant's history of left elbow tendon rupture and lateral epicondylitis, status-post lateral epicondylectomy, the claimant alleged that he has constant pain in his left arm, neck and back and is unable to do anything with his left arm and needs help with all his household chores and yard work." (AR 20.) The ALJ rejected Plaintiff's symptom testimony on the following grounds: (1) lack of consistency with medical evidence; and (2) improvement with conservative treatment. (AR 19–21.) As discussed below, the Court concludes that these reasons are not legally sufficient to discount Plaintiff's subjective symptom testimony.

### 1.   Improvement with Conservative Treatment

An ALJ may consider a claimant's treatment and medication in evaluating a claimant's symptom testimony. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). "[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (quoting *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995)); *see also Tommasetti*, 533 F.3d at 1039–40 (determining that claimant's favorable response to conservative treatment undermined claimant's testimony of disabling pain); *Johnson*, 60 F.3d at 1434 (holding that ALJ properly may rely on the fact that only conservative treatment had been prescribed to reject claimant testimony). However, "[a]ny evaluation of the aggressiveness of a treatment regimen must take into account the condition being treated." *Revels v. Berryhill*, 874 F.3d 648, 667 (9th Cir. 2017).

In addition, an ALJ may reject the testimony of a claimant whose symptoms are fairly controlled with treatment. *See Celaya v. Halter*, 332 F.3d 1177, 1181 (9th Cir. 2003) ("[T]he ALJ reasonably noted that the underlying complaints upon which her reports of pain were predicated had come under control."); *see also Warre v. Comm'r of SSA*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that

can be controlled effectively with medication are not disabling for the purpose of determining eligibility for [disability] benefits."). However, the examples cited by the agency to show a claimant's improvement must "constitute examples of a broader development" to satisfy the "clear and convincing" standard. *Garrison*, 759 F.3d at 1018. Moreover, as one district court explained: "to reject a claimant's testimony, it is not enough for the ALJ to show that the pain was responsive to treatment; the ALJ must show that the pain was 'controlled,' . . . i.e., no longer debilitating. The fact that a claimant experienced a brief period of reprieve following treatment does not support a finding that her pain was controlled. Rather, the ALJ must show that the treatment was capable of providing lasting relief." *Lopez v. Colvin*, 194 F. Supp. 3d 903, 911 (D. Ariz. 2016).

  Here, the ALJ acknowledged that Plaintiff had a ruptured tendon, and that he "failed conservative treatment and required surgery." (AR 20.) The ALJ noted that on June 8, 2020, Plaintiff underwent a "left lateral epicondylectomy and extensor tendon debridement with repair." (*Id*.) The ALJ found that after the surgery, Plaintiff "was treated conservatively with some improvement of his strength and range of motion" (*id*.), that "Plaintiff's symptoms were reduced with medication and not so severe as to require more aggressive treatment" (AR 21), and that his "symptoms improved with conservative treatment" (*id*.).

  The record shows that Plaintiff's treatment regimen included surgery, cortisone injections, physical therapy, anti-inflammatory medications, and prescription-strength Ibuprofen (800 mg). (*See generally* AR.) The ALJ's characterization of Plaintiff's treatment as conservative was not a clear reason to reject Plaintiff's testimony because the ALJ does not explain why this treatment regimen would be considered conservative. *See Revels*, 874 F.3d at 667 ("The ALJ provided no explanation why he deemed this treatment 'conservative' . . . ."). As the ALJ recognized, surgery is not conservative treatment. (*See* AR 20 ("[T]he claimant failed conservative treatment and required surgery.") *See Trevizo*, 871

11

F.3d at 677 (referring to surgery as "aggressive intervention"). Moreover, courts have questioned whether injections constitute conservative treatment. *See, e.g. Garrison*, 759 F.3d at 1015 n.20 (expressing "doubt that epidural steroid shots to the neck and lower back qualify as 'conservative' medical treatment"); *Revels*, 874 F.3d at 667 ("doubting" that epidural steroid shots qualify as "conservative" medical treatment); *Trevizo*, 871 F.3d at 677 (referring to steroid injections and block injections as "aggressive interventions").

Furthermore, the ALJ erred because he discredited Plaintiff's symptom testimony as a whole based on the effectiveness of conservative treatment *after* his surgery, but failed to explain how his post-surgery conservative treatment contradicted Plaintiff's testimony about his symptoms from the disability onset date (February 12, 2020) until his surgery (June 8, 2020). *See Smith v. Kijakazi*, 14 F.4th 1108, 1113 (9th Cir. 2021) ("The ALJ therefore erred by disregarding *all* of [claimant's] testimony, including the portion about his early-period incapacity, on the basis of inconsistencies only clearly applicable to the late-period testimony."). Accordingly, the ALJ did not provide a clear and convincing reason to discount Plaintiff's pre-surgery symptom testimony. *See id.*

As to Plaintiff's post-surgery symptom testimony, the ALJ's conclusion that Plaintiff's symptoms improved with conservative treatment was unreasonable given the weight of evidence in the record as a whole. The ALJ did not show "a broader development" of improvement after Plaintiff's surgery so as to satisfy the "clear and convincing" standard. *See Garrison*, 759 F.3d at 1018. The ALJ selectively cites evidence of pain management through conservative treatment that does not accurately reflect the medical record as a whole. *See Ghanim*, 763 F.3d at 1164 ("[T]he treatment records must be viewed in light of the overall diagnostic record."); *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975) ("We cannot affirm the examiner's conclusion simply by isolating a specific quantum of supporting evidence.").

1        For example, the ALJ's conclusion that, in July 2020, Plaintiff's "pain was
2 slowly improving" was not supported by substantial evidence. (AR 20.) On July 1,
3 2020, Plaintiff "complain[ed] of significant residual pain and limitation," and his
4 primary doctor noted that it "seems a bit more painful since surgery." (AR 560.)
5 On July 8, 2020, Plaintiff reported "no significant changes to report"; that he had
6 "transient episodes of 'shocklike' pain" at his elbow, sore incision area; and that he
7 was "[s]till very weak" and "has trouble holding anything[—]cup of coffee, can of
8 beverage[—]for very long." (AR 578.) On July 15, 2020, Plaintiff continued to
9 complain about pain. (AR 596.) On July 20, 2020, Plaintiff continued to complain
10 about pain and noted "weakness with lifting activities." (AR 605.)
11        As another example, the ALJ's conclusion that Plaintiff was "showing slow
12 improvement" in September 2020 also is not supported by substantial evidence.
13 (AR 21.) On September 8, 2020, Plaintiff went to the emergency room with neck
14 and back pain, stating that his neck and upper back pain were "getting worse," that
15 he has had "persistent pain" in the left arm, and that he has "tried ibuprofen without
16 relief." (AR 839.) On September 10, 2020, Plaintiff "continued[d] to have
17 significant pain." (AR 805.) On September 16, 2020, Plaintiff stated that "he
18 cont[inues] to have pain all the time." (AR 726.) On September 22, 2020, Plaintiff
19 stated that his left elbow and forearm were "still very tender" and he "fatigues
20 quickly with activity." (AR 746.) On September 23, 2020, Plaintiff stated that he
21 was still having pain on his left elbow and tenderness. (AR 756.)
22        In addition, while the ALJ repeatedly concludes that Plaintiff is improving
23 with conservative treatment, he ignores the medical records that lead to the opposite
24 conclusion. On September 8, 2020, Plaintiff went to the emergency room with
25 neck and back pain, stating that his neck and upper back pain were "getting worse,"
26 that he had "persistent pain" in the left arm, and that he had "tried ibuprofen
27 without relief." (AR 839.) On October 8, 2020, Plaintiff complained of "constant"
28 pain that he described as "sharp, pins-and-needles," stated that he had "not

identified anything that improves the pain," and was given a cortisone shot. (AR 807–08.) On November 19, 2020, Plaintiff complained that his pain was "constant" and described it as "dull, sharp, throbbing, pins-and-needles, numbness and tingling" that was "worse with moving the arm" and "improved by not moving the arm." (AR 810.) Dr. Longacre noted that Plaintiff "has not done well following surgery," that "[h]e really is not improved with any treatment thus far," and that "[h]e has failed improvement with any treatment including surgery and injection." (AR 810, 816.)

In sum, this reason for discounting Plaintiff's subjective symptom testimony is not supported by substantial evidence.

### 2. Objective Medical Evidence

An ALJ may consider whether a claimant's subjective symptoms are supported by objective medical evidence, and an ALJ may reject a claimant's subjective testimony if it is inconsistent with the objective medical evidence. *See Carmickle v. Comm'r, SSA*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."). Although an ALJ may consider lack of medical evidence when analyzing Plaintiff's subjective allegations, "lack of medical evidence cannot form the sole basis for discounting pain testimony." *Burch*, 400 F.3d at 681.

Even assuming the record supports the ALJ's reasoning regarding the lack of support from objective medical evidence, the only other reason the ALJ identified to discount Plaintiff's subjective symptom testimony is insufficient. Standing alone, lack of objective medical evidence is a legally insufficient reason to support the assignment of little weight to a claimant's subjective symptom allegations. *See Robbins*, 466 F.3d at 883 (holding that where ALJ's other reason to reject the claimant's testimony was legally insufficient, the sole remaining reason premised on the absence of objective medical support could not justify an adverse credibility

determination); *see also Bunnell*, 947 F.2d at 345 ("[A]n adjudicator may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain.").

In sum, the ALJ's decision does not provide specific, clear, and convincing reasons for rejecting Plaintiff's subjective symptom allegations.

### E. Remand for Further Proceedings

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. *See Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *See id.* at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings."). However, where, as here, the circumstances of the case suggest that further administrative review could remedy the Commissioner's errors, remand is appropriate. *See McLeod v. Astrue*, 640 F.3d 881, 888 (9th Cir. 2011). Specifically, remand is warranted here for reconsideration of Plaintiff's symptom statements because the ALJ's failure to provide any clear explanation for discounting Plaintiff's pre-surgery statements in the decision prevents this Court from meaningfully determining whether the decision is supported by substantial evidence. *See Treichler*, 775 F.3d at 1103 ("Because 'the agency's path' cannot 'reasonably be discerned,' we must reverse the district court's decision to the extent it affirmed the ALJ's credibility determination." (citation omitted)).

///
///
///
///

## V.  ORDER

The Court **ORDERS** that judgment be entered reversing the decision of the Commissioner and remanding this mater for further administrative proceedings.

**IT IS SO ORDERED.**

DATED: September 14, 2023

_____
MARIA A. AUDERO
UNITED STATES MAGISTRATE JUDGE